IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| EMERALD CITY MANAGEMENT, L.L.C. and EMERALD CITY BAND, INC. § § § Plaintiffs, § § v. § § JORDAN KAHN and JORDAN KAHN § MUSIC COMPANY, L.L.C. § § Defendants. § | CIVIL ACTION NO. 4:14cv358 |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On October 2, 2014, the Court held a hearing on Plaintiffs' Amended Second Application for a Preliminary Injunction (Dkt. 45) and Defendants' Motion for Sanctions (Dkt. 53), the matters having been referred to the undersigned by the Honorable Richard A. Schell for a hearing and report and recommendation (*see* Dkt. 55). Having considered the arguments, evidence, and testimony presented at the hearing, the Court finds that Plaintiffs' Amended Second Application for a Preliminary Injunction (Dkt. 45) should be GRANTED in part and DENIED in part and that Defendants' Motion for Sanctions (Dkt. 53) should be DENIED.

### FACTUAL BACKGROUND

The dispute between the parties in this case is fully set forth in the Court's June 19, 2014 report and recommendation. *See* Dkt. 19. Plaintiffs Emerald City Management, L.L.C. and Emerald City Band, Inc. are well known entertainers in the music field with a niche in special event entertainment. Defendant Jordan Kahn was an employee of Plaintiffs who, along with Plaintiffs,

1

expanded Plaintiffs' musical enterprise by forming a new band called Downtown Fever. When Jordan Kahn left the employ of Plaintiffs, Plaintiffs allege, he continued to use their Downtown Fever name to market a band of his own. Plaintiffs bring this suit for violation of 15 U.S.C. § 1125 as well as several state causes of action as a result of Defendants Jordan Kahn Music Company L.L.C. and Jordan Kahn's use of the Downtown Fever name.

On June 6, 2014, the Court held a hearing on Plaintiffs' first Application for a Temporary Restraining Order and Preliminary Injunction and found that Plaintiffs should be granted some of the injunctive relief requested. Those findings were adopted by the District Judge on August 1, 2014 and a preliminary injunction was entered. *See* Dkt. 37. The District Judge ordered that:

1. The Kahn Defendants shall cease and desist from using the name Downtown Fever in the state of Texas, including but not limited to, promotion and performance activities;

2. Any websites or hosting sites shall not list Kahn's Downtown Fever band as performing in the state of Texas;

3. Kahn may not contact customers of Emerald City to promote his Downtown Fever band in the state of Texas;

4. Kahn shall cease and desist from using Emerald City's confidential business information; and

5. Nothing herein shall prevent Kahn from using the mark outside the state of Texas.

Dkt. 37. That order is currently on appeal.

On August 15, 2014, Plaintiffs filed their Amended Second Application for a Preliminary Injunction (*see* Dkt. 45). Plaintiffs argue that, in addition to the injunctive relief already granted in their first application, they seek additional relief ordering Defendants and their agents to:

2

(a) Cease and desist from copying, using, and/or displaying any images and/or information from Plaintiffs' website, logo, and performances, in whole or in part, on the Defendants' new website, any other social media, and in any other form or fashion, including but not limited to any images of Plaintiffs' logo, Plaintiffs' band members, performances by Plaintiffs' band, testimonials from customers of Plaintiffs, and any derivative versions of the Plaintiffs' website, logo, and performances, and to delete any images, information, and/or performances from any website, any other social media, and any other form and fashion under the care, custody or control of Defendants which contain any such images, information, and/or performances, including but not limited to deleting those images, information, and/or performances from Defendants' new website, www.usadowntownfever.com, from any sub domain to that new web site, from the Defendants' website for their band in Boston, Massachusetts, and from Jordan Kahn's YouTube site;

(b) Transfer to Plaintiffs complete control, including but not limited to the domain name, of Downtown Fever's website, www.downtownfeverband.com, and Downtown Fever's accounts on Facebook, YouTube, Twitter, FYPL.com, Instagram, and Google Calendar, and to provide the passwords to those web sites and social media to Plaintiffs; and,

(c) Cease and desist from contacting and/or responding to any person or entity that inquires to Defendants about booking Plaintiffs' Downtown Fever band, including but not limited to responding to any email that was sent to the Plaintiffs' Downtown Fever band.

*See* Dkt. 45 at 13-14.

On September 4, 2014, Defendants filed their response in opposition to Plaintiffs' application as well as their Motion for Sanctions. *See* Dkts. 52 & 53. On September 18, 2014, both the application for injunctive relief and the motion for sanctions were referred to the undersigned. *See* Dkt. 55.

The Court held a hearing on Plaintiffs' Amended Second Application for a Preliminary Injunction and Defendants' Motion for Sanctions on October 2, 2014. At the hearing, Plaintiffs called Robert Kaufman to testify and Defendants called Dean Taglioli. Plaintiffs also offered several

pieces of documentary evidence in support of their request for injunctive relief. *See* Dkt. 63.

After hearing the evidence and testimony presented, the Court made preliminary findings on the record regarding some of the requested injunctive relief and found that sanctions were not warranted. The Court specifically directed the parties to confer regarding Downtown Fever's Facebook account and to reach an agreement regarding the return of the administrator status of the account to Plaintiffs. On October 8, 2014, the Court entered an order encouraging the parties to reach an agreement as to the outstanding matters raised in the injunction motion based on the Court's findings made on the record at the hearing. *See* Dkt. 66. On October 20, 2014, the parties filed a Joint Notice of Conference Report indicating that they conferred but were not able to resolve any outstanding matters. *See* Dkt. 68. The Court thus issues this report and recommendation as to the pending matters.

**STANDARD FOR INJUNCTIVE RELIEF AND APPLICABLE LAW**

A preliminary injunction is an "extraordinary remedy." *Texans for Free Enter. v. Tex. Ethics Comm'n,* 732 F.3d 535, 536 (5th Cir. 2013). A court may grant an application for a preliminary injunction "only if the movant establishes (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Id.* at 536–37 (quoting *Byrum v. Landreth,* 566 F.3d 442, 445 (5th Cir. 2009)).

A plaintiff establishes Lanham Act liability by showing that the defendant "'uses in commerce any word, term, name, symbol, or device'" that is "'likely to cause confusion, or to cause

4

mistake'" about the "'origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *See Paulsson Geophysical Servs., Inc. v. Sigmar,* 529 F.3d 303, 309 (5th Cir.2008) (quoting 15 U.S.C. § 1125(a)(1)(A)). The analysis proceeds in two steps. A court first considers whether the plaintiff has a "protectable right in the mark" and then whether there is a "likelihood of confusion between the marks." *Id.* (citing *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.,* 750 F.2d 1295, 1298 (5th Cir. 1985)).

Ownership of a mark is established by use in the market, not by registration. *Board of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008); *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin,* 909 F.2d 839, 842 (5th Cir. 1990). "Neither application for, nor registration of, a mark at the federal level wipes out the prior, non-registered, common law rights of others." 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:2 (4th ed.) (footnote omitted). The nonregistered rights of a senior user continue and are not trumped by a later federal registration of a junior user. *Id.*

When evaluating a claimed likelihood of confusion, courts consider the following non-exhaustive list of factors, known as the "digits of confusion":

(1) the type of trademark allegedly infringed;
(2) the similarity between the two marks;
(3) the similarity of the products or services;
(4) the identity of the retail outlets and purchasers;
(5) the identity of the advertising media used;
(6) the defendant's intent; and
(7) any evidence of actual confusion.

*Elvis Presley Enter., Inc. v. Capece,* 141 F.3d 188, 194 (5th Cir. 1998). "No single factor is

dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these 'digits of confusion.'" *Id.* A court may also consider other relevant factors in determining whether a likelihood of confusion exists. *Id.*

**ANALYSIS**

The Court finds that Plaintiffs have not sustained their burden regarding their request for an order directing Defendants to cease and desist from copying, using, and/or displaying any images and/or information from Plaintiffs' website, logo, and performances, in whole or in part, on the Defendants' new website, any other social media, and in any other form or fashion and to delete any images, information, and/or performances from any website, any other social media, and any other form and fashion under the care, custody or control of Defendants which contain any such images, information, and/or performances. First, much of this relief was addressed in the preliminary injunction order currently on appeal and the Court declines to make any recommendations that would impermissibly interfere in the interlocutory appellate process.

Second, as to any matters not already addressed by the previous injunction order, Plaintiffs have not shown a likelihood of success on the merits regarding their claims that the images or information currently used by Defendants would cause confusion as to any Texas performances. As to Plaintiffs' allegations about Defendants' new website, www.usadowntownfever.com, according to the testimony presented at the hearing, it has been twice revised and much of the content to which Plaintiffs objected has been removed. Further, the Court's prior injunction order already addressed Defendants' use of the Downtown Fever name on websites and hosting sites and granted sufficiently tailored relief to Plaintiffs to prevent irreparable harm to them. As to the use of any videos of

performances by Kahn or others while they were members of Plaintiffs' band, Plaintiffs did not sufficiently demonstrate a likelihood of success on the merits that such would likely cause confusion in the Texas marketplace.

Similarly, with the exception of the Facebook account at issue which is addressed below, the Court finds that Plaintiffs have not sustained their burden in presenting evidence to support their claim for injunctive relief regarding Downtown Fever's accounts on YouTube, Twitter, FYPL.com, Instagram, and Google Calendar. Because Plaintiffs have not offered sufficient evidence, the Court declines to find that they face irreparable injury.

As to Plaintiffs' request that Defendants be ordered to "[c]ease and desist from contacting and/or responding to any person or entity that inquires to Defendants about booking Plaintiffs' Downtown Fever band, including but not limited to responding to any email that was sent to the Plaintiffs' Downtown Fever band," the preliminary injunction order already directs that "Kahn may not contact customers of Emerald City to promote his Downtown Fever band in the state of Texas." *See* Dkt. 37 at 3. Moreover, the Court finds that Plaintiffs have not shown sufficient evidence of Defendants contacting and/or responding to any person inquiring about booking Plaintiffs' Downtown Fever band.

In sum, the Court finds that the majority of the injunctive relief requested by Plaintiffs is duplicative of the relief already requested by Plaintiffs and was addressed in the order currently on appeal. As noted at the hearing and in the Court's post-hearing order, however, the Court finds that Plaintiffs have offered sufficient evidence regarding Defendants' control of Downtown Fever's Facebook account to warrant additional injunctive relief. According to the testimony presented at

the hearing, Kahn has prevented Plaintiffs from accessing their Downtown Fever Facebook account and will not make the password available to them. Such, the Court agrees with Plaintiffs, causes them irreparable harm in the Texas marketplace.

The Court finds that Defendants should be ordered to transfer to Plaintiffs complete control of Downtown Fever's account on Facebook by providing Plaintiffs' counsel with the password and any other required materials to access and assume control of the account under an administrator status. Defendants should also be enjoined from making any alterations to or accessing (for any purpose other than to transfer the control to Plaintiffs) Downtown Fever's Facebook account.

All other requested injunctive relief should be denied.

## SANCTIONS

The Court next addresses Defendants' argument that they should be awarded sanctions under 28 U.S.C. §1927 or pursuant to the Court's inherent power. Defendants argue that Plaintiffs' multiple requests for injunctive relief unreasonably and vexatiously multiplied case proceedings. While the Court has found that much of the relief requested by Plaintiffs is duplicative of the first injunction, the Court also finds that Defendants' actions since the entry of the injunction order have unnecessarily complicated matters. It appears to the Court that as much as Plaintiffs have attempted to take a second bite at the apple as to the scope of injunctive relief, Defendants have attempted to test the limits of the Court's first order and certainly not heeded many of the Court's warnings regarding interfering with Plaintiffs' Texas Downtown Fever band. The blame is equally shared by both sides, neither has fully complied with the spirit of the Court's local rules regarding cooperation between parties, and thus both must bear the costs related to their conduct. The Court notes that

even when twice directed to work out the logistics of transferring the Facebook account at issue, the parties were not able to agree because Defendants required that Plaintiffs agree in writing that Plaintiffs would not brag on their Facebook page that they "got their Facebook page back," *see* Dkt. 68, and Plaintiffs apparently refused. No sanctions are warranted here.

**RECOMMENDATION**

It is therefore recommended that Plaintiffs' Amended Second Application for a Preliminary Injunction (Dkt. 45) be GRANTED in part and that Defendants be ordered to transfer to Plaintiffs complete control of Downtown Fever's account on Facebook by providing Plaintiffs' counsel with the password and any other required materials to access and assume control of the account under an administrator status within five (5) days of the entry of the order.[1] Defendants and their agents should also be enjoined from making any alterations to or accessing (for any purpose other than to transfer the control of the administrator status to Plaintiffs) Downtown Fever's Facebook account.

Plaintiffs' Amended Second Application for a Preliminary Injunction (Dkt. 45) should be DENIED as to all other injunctive relief requested, and, having considered the conduct by all parties in this case, Defendants' Motion for Sanctions (Dkt. 53) should be DENIED.

No additional bond is necessary given the bond already posted by Emerald City on June 25, 2014 in the amount of $10,000.00.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

---

[1] As to any limitations on Plaintiffs' use of their Facebook account, Plaintiffs should be mindful of any Court orders in this case.

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 4th day of December, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE