# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| EMERALD CITY MANAGEMENT, LLC and EMERALD CITY BAND, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:14-cv-00358 |
| JORDAN KAHN and JORDAN KAHN MUSIC COMPANY, LLC, | § § § § | Judge Mazzant |
| Defendants, | § § | |
| JORDAN KAHN, | § § § | |
| Counter-Plaintiff, | § § | |
| v. | § § | |
| EMERALD CITY MANAGEMENT, LLC and EMERALD CITY BAND, INC., DEAN "DENO" TAGLIOLI, | § § § § § | |
| Counter-Defendants / Third-Party Defendant. | § § | |

## ORDER ON JOINT MOTIONS IN LIMINE

On this day came before this Court Plaintiffs/Counter-Defendants Emerald City Band, Inc. ("ECB") and Emerald City Management, LLC ("ECM"), Third-Party Defendant Dean "Deno" Taglioli ("Taglioli"), Defendant/Counter-Plaintiff Jordan Kahn ("Kahn"), and Defendant Jordan Kahn Music Company, LLC ("JKMC") (collectively, the "Parties"), Joint Motions in Limine. After considering the Joint Motions and arguments of counsel, the Court FINDS and ORDERS the following:

# I.  AGREED MOTIONS IN LIMINE

The Court finds that the following Motions in Limine are agreed to by the parties and it is therefore ORDERED that

**1.   Non-Designated Witnesses**

The testimony of any witness, expert witness, or other person purporting to have knowledge of any matter involved in this case and whose identity was not disclosed during the discovery phase of the litigation and not identified on the Parties' witness lists, unless such witness' testimony is for impeachment.

**2.   Cooperation During Discovery**

Any evidence, statement, argument, reference, or suggestion that either of the Parties did not cooperate in the discovery process in this case.

**3.   Settlement Discussions**

Any evidence, statement, argument, reference, or suggestion that the Parties have made, considered, or promised to accept, or will make, consider, or accept any offer to compromise or settle the claims involved in this action. The matter to be excluded by this paragraph includes the fact that settlement discussions have or have not taken place, the amounts of any offers of settlement, as well as statements or conduct of any party in connection with settlement discussions.

**4.   Items or Information from Opposing Counsel**

That counsel for either party not ask opposing counsel for any items or information in the presence of the jury.

5.  **Preliminary Injunctions**

Any evidence, statement, argument, reference, or suggestion relating to any preliminary injunctions in this action, including, but not limited to, the prosecution and defense of any preliminary injunctions in this action, the findings of fact or conclusions of law contained in any order regarding any preliminary injunctions in this action, the entry of any preliminary injunctions in this action, or the appellate court's affirmance of such entry.

6.  **Bates No. ECM_0366, later renumbered to ECM _0743**

Any evidence, statement, argument, reference, or suggestion relating to the photograph and text messages contained in Bates-labeled document ECM_0366, later renumbered to ECM_0743.

7.  **Documents not then Admitted**

Any evidence, statement, argument, reference, or suggestion regarding the contents of any document not then admitted into evidence, except: (1) to establish the predicate for admissibility of that document; or (2) to impeach a witness then on the witness stand.

8.  **Religious or Political Beliefs**

Any evidence, statement, argument, reference, or suggestion relating to any religious or political affiliations or beliefs.

## II.  ECB's, ECM's, AND TAGLIOLI'S MOTIONS IN LIMINE

The Court finds that the following Motions in Limine should be GRANTED or DENIED as indicated below:

1.  **<u>Referring to ECB, ECM, and/or Taglioli collectively, including but not limited to referring to them collectively as "Emerald City" and/or the "Taglioli Parties".</u>**

ECB and ECM originally filed this lawsuit against Kahn and JKMC. Kahn then filed a counterclaim/third-party claim against ECB, ECM, and Taglioli. In doing so, however, Kahn for

the most part lumped ECB, ECM, and Taglioli together in making his allegations. Kahn has also treated ECB, ECM, and Taglioli as some type of single entity throughout the discovery process in this case by referring to ECB, ECM, and Taglioli collectively as "Emerald City" and/or the "Taglioli Parties". That is improper.

ECB, ECM, and Taglioli are three separate parties to this lawsuit, each with their own unique claims and defenses. For example, Kahn claims that during a telephone call in June 2009 ECM, ECB and Taglioli somehow fraudulently induced Kahn to move back to the Dallas area and work for Taglioli by orally promising that Kahn would be a 30% "partner/co-owner" in "Emerald City Management". ECM has a unique defense against that allegation because it was not even in existence at the time of the alleged fraud.

Therefore, the probative value of allowing Kahn to collectively refer to ECB, ECM, and Taglioli as "Emerald City" and/or the "Taglioli Parties" is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay. If allowed in, this will unnecessarily prolong the trial and, in the end, will only confuse and mislead the jury. FED. R. EVID. 402 & 403.

**AGREED _____    GRANTED _____    DENIED  X_____**

2. **Statements made by Kahn to his ex-girlfriend, Kerrie O'Neil.**

During the deposition of Kahn's ex-girlfriend, Kerrie O'Neil, counsel for Kahn and JKMC asked several questions about statements made by Kahn to O'Neil. Such evidence constitutes inadmissible hearsay. FED. R. EVID. 801-802.

**AGREED _____    GRANTED  X_____    DENIED _____**

3. **Kerrie O'Neil's belief as to whether Kahn was a part owner in ECM and/or owned the mark Downtown Fever.**

Also during the deposition of Kahn's ex-girlfriend, Kerrie O'Neil, counsel for Kahn and

JKMC asked several questions about whether O'Neil believed Kahn was a part owner of ECM and/or owned the mark Downtown Fever. Such testimony is not based on personal knowledge and constitutes inadmissible opinion by a lay witness. FED. R. EVID. 602 & 701.

**AGREED** _____  **GRANTED** _____  **DENIED** **X**\_\_\_\_\_

4. **Whether band members talked about, believed or were under the impression that Kahn was an owner in ECM.**

Also during the deposition of Kahn's ex-girlfriend, Kerrie O'Neil, she testified that other band members talked about Kahn as an owner of ECM and/or that they were under that impression. Such testimony is not based on personal knowledge, constitutes inadmissible opinion by a lay witness, and constitutes hearsay. FED. R. EVID. 602, 701 & 801-802.

**AGREED** _____  **GRANTED** _____  **DENIED** **X**\_\_\_\_\_

5. **Whether Doug Morris took any data and/or documents with him when he left Absolute Entertainment and went to work for ECB and ECM.**

Doug Morris is currently employed by ECB and ECM as their Director of Sales. Prior to that, Mr. Morris was employed by Absolute Entertainment. During his deposition, counsel for Kahn and JKMC asked numerous questions of Morris about whether he took any data and/or documents, including a Binders of Procedures, with him when he left Absolute Entertainment and took it to ECB and ECM. Morris replied that he did not recall doing that.

None of the claims or defenses in this lawsuit concern Absolute Entertainment. Therefore, whether or not Morris took any data and/or documents with him when he left Absolute Entertainment and may have brought it to ECB and ECM is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

**AGREED** _____ **GRANTED** X_____ **DENIED** _____

6. **Whether ECM contemplated terminating Kahn's employment prior to Kahn's resignation.**

This is not a wrongful termination case. Yet, during several of the depositions in this case, counsel for Kahn and JKMC asked several questions about whether management for ECM had discussions about terminating Kahn prior to his resignation. ECB's and ECM's corporate representative (Taglioli) testified that no such discussions took place. Nevertheless, even if those discussions did take place, such evidence is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

**AGREED** _____ **GRANTED** X (as applied to Kaufman)
**DENIED** X (as applied to Taglioli)

7. **Whether any statements contained on the websites of ECB and ECM are false.**

ECB and ECM asserted claims of false advertising against Kahn and JKMC. Kahn and JKMC have not, however, asserted any similar claims against ECB, ECM and/or Taglioli. Yet, despite not making any such allegations, during the deposition of ECB's and ECM's corporate representative in this case, counsel for Kahn and JKMC asked several questions about whether several statements on ECB's and ECM's websites were false. For example, counsel for Kahn and JKMC asked if the statement on ECB's and ECM's websites as to the number of corporate and wedding events was accurate. The corporate representative testified it was accurate. Nevertheless, even if not accurate, such evidence is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

AGREED _____    GRANTED _____    DENIED  X   

8. **Whether ECB and/or ECM paid Google to run advertisements for their bands when consumers were searching for Kahn.**

During the deposition of the corporate representative of ECB and ECM, counsel for Kahn and JKMC inquired about whether ECB and/or ECM paid Google to run advertisements for their bands when consumers were searching for Kahn. The corporate representative was not aware of any such advertisements. Moreover, even if any such advertisements did exist, Kahn and JKMC have not asserted any cause of action related those advertisements. Therefore, such evidence is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

AGREED _____    GRANTED  X   　DENIED _____

9. **Whether Taglioli ever used any illegal drugs.**

During the corporate deposition of ECB and ECM, counsel for Kahn inquired whether Taglioli had ever used any illegal drugs. Such evidence is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

AGREED _____    GRANTED  X   　DENIED _____

10. **Whether Scott Michael Swiecki was arrested for possession of marijuana.**

During the corporate deposition of Scott Michael Swiecki, one of the band members of ECM's Downtown Fever band, counsel for Kahn and JKMC inquired whether Swiecki had ever been arrested. Swiecki responded that he had been arrested for possession of marijuana close to 10 years ago but the conviction was waived by his completion of probation. Such evidence is

irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

**AGREED _____   GRANTED X_____   DENIED _____**

11. **Proceedings before the USPTO**

On November 16, 2010, ECB filed an application with the United States Patent and Trademark Office ("USPTO") to register the word mark DOWNTOWN FEVER. At or about that time, the USPTO suspended that application based on a prior trademark application. Recently, the USPTO removed that suspension and on May 5, 2015, published ECB's application for Opposition. Kahn, in turn, then filed his Notice of Opposition and his own application to register the word mark DOWNTOWN FEVER. The USPTO has yet to rule on any of these matters. Evidence of the proceedings with the USPTO is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay. FED. R. EVID. 402 & 403.

**AGREED _____   GRANTED X_____   DENIED _____**

12. **Expert opinions that have not been disclosed.**

Pursuant to this Court's Pre-trial Scheduling order and the Federal Rules of Civil Procedure, the parties designated their experts in this case and provided their expert reports. Kahn and JKMC should therefore be prohibited from referring or offering any expert opinion not contained in their expert's written report.

**AGREED X_____   GRANTED _____   DENIED _____**

**13.    The Parties respective wealth.**

Any reference or argument about the wealth of ECB, ECM, and/or Taglioli in comparison to the wealth, or lack thereof, of Kahn and/or JKMC because the same in not relevant to any issue in this lawsuit and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay. FED. R. EVID. 402 & 403.

**AGREED  X          GRANTED  _____     DENIED  _____**

**14.    Non-Designated Exhibits.**

Any Exhibit that was not previously produced in discovery in this case and not listed in Kahn's and JKMC's List of Exhibits.

**AGREED  X          GRANTED  _____     DENIED  _____**

**15.    Failure to call witness.**

Any reference or argument about ECB's, ECM's, and/or Taglioli's failure to call any witness(es) to testify in the present action, because the same in not relevant to any issue in this case. Moreover, it would be improper for anyone to make reference to, comment on, or speculate about the substance of the testimony of the absent witness(es) before the jury. There is no close, confidential, or fiduciary relationship between the(se) person(s) and movant.

**AGREED  X          GRANTED  _____     DENIED  _____**

**16.    Asserting Objections/Privilege.**

Any evidence or suggestion that ECB, ECM, and/or Taglioli refused to disclose information based on a relevancy or privilege and objected and sought protective orders in connection with attempted discovery of such information, because such evidence is not admissible before the jury. The refusal to disclose was based on a legitimate claim that the

matter sought was irrelevant or privileged information. To prevent inadmissible information from prejudicing the jury, the matter to be excluded by this request includes any reference to the court's ruling on the claims of irrelevancy or privilege and the imposition of any sanctions for refusing discovery. FED. R. EVID. 501.

**AGREED  X**       **GRANTED** _____       **DENIED** _____

### III.   KAHN AND JKMC'S MOTIONS IN LIMINE

The Court finds that the following Motions in Limine should be GRANTED or DENIED as indicated below:

**1.    Mr. Kahn's Alleged Past Drug Use**

Any evidence, statement, argument, reference, or suggestion relating to Mr. Kahn's past or alleged use of illegal drugs, including, but not limited to, marijuana. Whether Mr. Kahn used illegal drugs before, after, or while associated with Plaintiffs is not relevant to the claims or defenses of either party in this suit. FED. R. EVID. 401, 402.  Whether Mr. Kahn used illicit drugs while associated with Plaintiffs is not relevant to determining whether Taglioli fraudulently induced Mr. Kahn to relocated to the Dallas area to assist Taglioli in the management and operations of his party bands, and form, run, promote a new Downtown Fever band under the Emerald City umbrella, in exchange for a 30% ownership interest in the business. *Id.* It is also inadmissible as evidence that Mr. Kahn has the character of a drug user. FED. R. EVID. 404, 405. The probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED. R. EVID. 403.

**AGREED** _____       **GRANTED  X**       **DENIED** _____

**2. Mr. Kahn's Alleged Past Sexual Activities**

Any evidence, statement, argument, reference, or suggestion relating to Mr. Kahn's prior sexual activities, including any sexual behavior, relationships, any alleged sexual harassment, or any sexually-related complaints of any independent contractors or employees of Plaintiffs. Mr. Kahn's sexual matters, including any sexual relationships with independent contractors or employees of Plaintiffs, as well as any complaints related to sexual harassment made by them, are not relevant to the claims or defenses of either party in this suit. FED. R. EVID. 401, 402. The only purpose such evidence would serve would be to offend the morals of the jury in hopes of prejudicing Defendants' case. It is also inadmissible as character evidence of Mr. Kahn's sexual activities and nature. FED. R. EVID. 404, 405. The probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED. R. EVID. 403.

**AGREED _____    GRANTED  X\_\_\_\_\_    DENIED _____**

SIGNED this 14th day of January, 2016.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE