# EXHIBIT

# A

# LUNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| EMERALD CITY MANAGEMENT, LLC and EMERALD CITY BAND, INC., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:14-cv-00358-RAS |
| v. | § § | |
| JORDAN KAHN and JORDAN KAHN MUSIC COMPANY, LLC, | § § § | |
| Defendants, | § | Jury Trial Demanded |

| | | |
|---|---|---|
| JORDAN KAHN, | § § | |
| Counter-Plaintiff, | § § | |
| v. | § § | |
| EMERALD CITY MANAGEMENT, LLC and EMERALD CITY BAND, INC., DEAN "DENO" TAGLIOLI, | § § § § | |
| Counter-Defendants / Third-Party Defendant. | § § | |

## DEFENDANTS' RULE 26(a)(2) EXPERT DISCLOSURE

Pursuant to Rule 26(a)(2), Defendants Jordan Kahn and Jordan Kahn Music Company,

LLC hereby serve their expert disclosure.

Drew D. Mooney
Managing Director
FTI Consulting, Inc.
2001 Ross Avenue, Suite 400
Dallas, Texas 75201
214.397.1784

*See* Expert Report of Drew D. Mooney, attached hereto as Exhibit A.

EXHIBIT "A"

Dated: July 31, 2015

**GRIFFITH BATES CHAMPION & HARPER LLP**

*/s/ Casey Griffith*
Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbates.com
----
Austin Champion
Texas Bar No. 24065030
Austin.Champion@griffithbates.com
----
Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbates.com
----
5910 N Central Expressway, Suite 1050
Dallas, Texas 75206
214-238-8400 | Main
214-238-8401 | Fax

-AND-

Ernest W. Leonard
Texas Bar No. 12208750
FRIEDMAN & FEIGER, LLP
5301 Spring Valley Road, Suite 200
Dallas, Texas 75254
(972) 788-1400 Telephone
(972) 788-2667 Facsimile

***Attorneys for Jordan Kahn and Jordan Kahn Music Company, LLC***

## CERTIFICATE OF SERVICE

The undersigned certifies the foregoing document was served via email on all counsel of record on July 31, 2015.

*/s/ Casey Griffith*
Casey Griffith

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

EMERALD CITY MANAGEMENT, L.L.C. and EMERALD CITY BAND, INC.,

      Plaintiffs,

v.

JORDAN KAHN and JORDAN KAHN MUSIC COMPANY, L.L.C.,

      Defendants,

v.

Dean "Deno" Taglioli

      Third-Party Defendant.

Civil Action No. 4:14-CV-00358-RAS

## **EXPERT REPORT OF DREW D. MOONEY**

## **CONTAINS CONFIDENTIAL INFORMATION**
## **PURSUANT TO PROTECTIVE ORDER**

Dated: July 31, 2015

_____

Drew D. Mooney

## Table of Contents

I.   INTRODUCTION ............................................................................................................. 3

    A.   Qualifications ....................................................................................................... 3

    B.   Assignment ............................................................................................................ 4

    C.   Information Considered ....................................................................................... 4

II.   BACKGROUND ............................................................................................................... 5

III.   CAUSES OF ACTION ..................................................................................................... 7

IV.   VALUATION OVERVIEW ............................................................................................. 8

    A.   Standards of Value ............................................................................................... 8

    B.   General Valuation Methodologies ...................................................................... 8

    1.   Asset Based Approach .......................................................................................... 9

    2.   Income Based Approach ....................................................................................... 9

    3.   Market Based Approach ..................................................................................... 10

    C.   Possible Valuation Adjustments ....................................................................... 11

V.   ROLE OF FINANCIAL INFORMATION IN VALUATIONS ................................. 11

    A.   Income Statements ............................................................................................. 12

    B.   Balance Sheets .................................................................................................... 12

    C.   Cash Flow Statements ........................................................................................ 12

    D.   Other Financial Data Sources .......................................................................... 12

VI.   VALUATION ANALYSIS .............................................................................................. 13

VII.   TRADEMARK INFRINGEMENT ANALYSIS ........................................................... 13

    A.   Applicable Trademark Law ............................................................................... 13

Confidential – Pursuant to Protective Order

## I.      INTRODUCTION

### A.      Qualifications

I am a Managing Director for FTI Consulting, Inc. ("FTI"), a financial consulting firm that provides valuation, financial consulting, forensic accounting, and dispute analysis services. I have consulted with a variety of companies regarding damages issues in litigation as well as various non-litigation financial issues.   I have provided valuation, financial, economic, and accounting consulting services, including matters involving breach of contract claims, to counsel and client companies.   This has included analyses of sales, costs, profits, and other related financial information.  I have also prepared and analyzed business plans and financial projections for business units and product lines.  I have been involved as a financial consultant for more than 12 years and have consulted with numerous publicly traded and closely held companies in a variety of industries.

I am a Certified Public Accountant ("CPA") licensed in Texas.   I am Accredited in Business Valuation ("ABV") and Certified in Financial Forensics ("CFF") through the American Institute of Certified Public Accountants ("AICPA").   I am a member of the AICPA and the Forensic and Valuation Services Section of the AIPCA.   I am also a member of the CFA Institute.  My curriculum vitae, which summarizes my education, experience, and qualifications and lists previous engagements in which I have been retained as an expert is attached as **Exhibit 1** to this report.

FTI Consulting is being compensated for my involvement in this matter at a rate of $295 per hour.  Other professionals at FTI Consulting working under my direction on this matter have billing rates ranging from $200 to $295 per hour.   FTI Consulting's compensation is not dependent on the outcome of this matter or my conclusions.

Confidential – Pursuant to Protective Order

### B.      Assignment

I have been retained by Friedman & Feiger LLP., counsel for Jordan Kahn ("Mr. Kahn") and Jordan Kahn Music Company, L.L.C. (collectively, "Defendants") to offer my independent opinions and conclusions and provide expert testimony, if necessary, regarding any damages claim associated with Defendants allegations against Emerald City Management, L.L.C. ("ECM") and Emerald City Band, Inc. ("ECB") (collectively, "Plaintiffs") and/or Dean "Deno" Taglioli ("Mr. Taglioli"), a third-party defendant in this matter.[1]

I have not been retained to, and I do not, express any opinions as to whether any party is liable to another party based on the allegations made in Defendants' Amended Answer, Affirmative Defenses, Counterclaim , and Third-Party Complaint.

### C.      Information Considered

As of the date of this report I have considered Defendants' Amended Answer, Affirmative Defenses, Counterclaim filed May 11, 2015, Defendants' Reply in Support of Their Motion to Compel Production of Documents filed July 30, 2015, and the transcript of the June 9, 2015 deposition of Jordan Kahn.

My analyses, opinions, and conclusions are based solely on the work performed by me, and those under my supervision, through the date of this report.  It is my understanding that discovery in this matter is ongoing and may be supplemented through the date of trial. Therefore, my opinions and conclusions are subject to change or modification should additional relevant information become available which bears on the analyses contained herein.   In particular, my analysis would consider financial data, such as income statements, balance sheets,

---

[1] In this report I refer to ECB, ECM, and Mr. Taglioli collectively as the "Taglioli Entities."

Confidential – Pursuant to Protective Order

statements of cash flows, and any related underlying data produced by Plaintiffs in this matter.  I understand that as of the date of this report such information has not been produced by Plaintiffs.

In connection with my anticipated trial testimony in this action, I may use various documents produced in this litigation that refer to, or relate to, the matters discussed in this report.  Although I may cite to a particular page or pages of documents in this report, such pinpoint cites are provided for clarification purposes only, and other portions of the documents cited may be relevant in my determination of damages in this matter.  In addition, I may create or assist in the creation of certain demonstrative schedules to assist me in testifying.  To date, I have yet to create such demonstrative schedules.

## II.    BACKGROUND[2]

I have reviewed and considered Defendants' Amended Answer, Affirmative Defenses, Counterclaim filed May 11, 2015 and Defendants' Reply in Support of Their Motion to Compel Production of Documents filed July 30, 2015 to understand Defendants' assertions in this matter. I discuss Defendants' assertions as follows.

Mr. Kahn is a singer/musician and band leader who created, originated and developed the trademark "Downtown Fever" into a party band with a unique sound while he was a student at Berklee College of Music in Boston, Massachusetts.[3]

Mr. Kahn grew up in Plano, Texas.  Before moving to Boston to attend Berklee School of Music, Mr. Kahn had met Mr. Taglioli and played with the Emerald City Band in 2004 and

---

[2] Information in this section is taken from assertions in Defendants' Amended Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint and Defendants' Reply in Support of Their Motion to Compel Production of Documents.
[3] Defendants' Amended Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, p. 15.

Confidential – Pursuant to Protective Order

2005.[4]  In February 2007, after he established the Downtown Fever Band, Mr. Kahn purchased domain names and designed and set up a website: "downtownfever.com."  Mr. Kahn has owned the domain name, downtownfever.com under which there are sub-domain names of boston.downtownfever.com, nashville.downtownfever.com, newyork.downtownfever.com, dallas.downtownfever.com, and usa.downtownfever.com from the domain name's inception in 2006.

Mr. Kahn has owned, paid for, and maintained the website and the domain name since its inception.  Further, the "Downtown Fever" mark has continually been used in connection with the event band, and the "Downtown Fever" mark has been used by Mr. Kahn continuously since that time (including while he was involved with ECB and ECM in Dallas, Texas).  The mark is inherently distinctive or has become distinctive of its goods and services and has become a recognized mark by virtue of longstanding use, extensive advertising and publicity, and has widespread identification by consumers and those in the trade.  The mark has been extensively used in the entertainment field.

While at Berklee School of Music, Mr. Kahn kept up with Mr. Taglioli and informed him of his growing success with the Downtown Fever Band.  As the Downtown Fever Band grew in popularity, it was sought out for performances throughout the states of Massachusetts, Connecticut, New York and New Hampshire, eventually performing in Nashville, New York City and New Orleans.  As the Downtown Fever Band's success increased, so did Mr. Taglioli's interest.

---

[4] Defendants' Amended Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, p. 15.

Confidential – Pursuant to Protective Order

Mr. Kahn asserts that Mr. Taglioli, on behalf of Emerald City, encouraged Mr. Kahn over a period of years to leave his successful Downtown Fever band in Boston to operate a Downtown Fever band in Dallas where the two could "make a lot of money."  After much persistence, Mr. Kahn eventually told Mr. Taglioli he would make the move, but only if he was made an equity owner in what he was told was the operational entity, ECM.  Mr. Taglioli agreed.  Relying on Mr. Taglioli's representation, Mr. Kahn moved to Dallas in August 2009 and a month later began working with Mr. Taglioli as the Director of Operations for ECM.  Over the next five years, Mr. Kahn helped expand the Emerald City enterprise and repeatedly requested the equity arrangement be formalized in writing.  Realizing Mr. Taglioli had no intention of honoring their agreement, Mr. Kahn left Emerald City in May 2014.

I understand under a common-law fraud claim, Mr. Kahn seeks the value of the thirty percent equity stake in ECM he was promised under a benefit-of-the-bargain theory.  I understand Mr. Kahn asserts that "[i]n my mind, we had an equity arrangement.  The partnership, in my mind, includes the entire scope of profit sharing, salaries, bonuses, incentives, paperwork proving a partnership."[5]  I understand that Mr. Kahn contends that the partnership "would include the entire scope of profit sharing, salaries, bonuses, and incentives."[6]

## III.   CAUSES OF ACTION

I understand Defendants allege the following causes of action in a counterclaim against Plaintiffs:[7]

1) Trademark Infringement;

2) Breach of Licensing Agreement;

---

[5] Defendants' Reply in Support of Their Motion to Compel Production of Documents filed July 30, 2015, p. 2.
[6] Defendants' Reply in Support of Their Motion to Compel Production of Documents filed July 30, 2015, p. 2.
[7] Defendants' Amended Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, pp. 19-28.

Confidential – Pursuant to Protective Order

3) Unfair Competition;

4) Fraudulent Registration with the Texas Secretary of State;

5) Misrepresentation/Fraud;

6) Misappropriation of Trade Secrets;

7) Unjust Enrichment;

8) Declaratory Relief;

9) Promissory Estoppel

For purposes of my analysis, I have been asked to perform a business valuation of ECB and/or ECM and Mr. Kahn's business interest in ECB and/or ECM.  I have also been asked to opine to sales revenue associated with any trademark infringement claim.

## IV.    VALUATION OVERVIEW

### A.    Standards of Value

Fair market value is the price, expressed in terms of cash equivalents, at which property would change hands between a hypothetical willing and able buyer and a hypothetical willing and able seller, acting at arms-length in an open and unrestricted market, when neither is under compulsion to buy or sell and when both have reasonable knowledge of the relevant facts.

Liquidation value is the net amount that would be realized if the business is terminated and the assets are sold piecemeal. Liquidation can be either "orderly" or "forced."

### B.    General Valuation Methodologies

There are three generally accepted methodologies for valuing a company: asset based approach, income based approach and market based approach.  Given the unique facts associated

with business entities, all valuation methodologies might not be applicable in all cases.  In the following, I briefly describe each of these methods.

### 1.    Asset Based Approach

The asset based approach is based on the premise that the value of the company can be determined by valuing each component of the business separately. In this approach the fair market value or liquidation value is determined for all of the assets and liabilities of the company. The difference between the value of the assets and the value of the liabilities is an indication of the value of the equity of the company.

### 2.    Income Based Approach

The income based approach is based on the generally accepted principle that the fair market value of a company may be measured by the present value of its future cash flows.  The cash flows of a company represent the recovery of an investment as well as a required rate of return on the investment. A discounted cash flow ("DCF") analysis is a form of the income approach which measures future cash flows and discounts them to their present worth.

In practice this approach utilizes pro-forma projections and cash flows in order to develop a value indication for the company.  A determination of the value of the company at the end of the forecast period, or terminal value, is also made.  The present value of the cash flows and the terminal value are calculated using a risk-adjusted rate of return or "discount rate."  The cash flows utilized in the discounted cash flow approach are discounted using an appropriate discount rate.  This approach utilizes pro-forma projections and cash flows in order to develop a value indication for the company.

Confidential – Pursuant to Protective Order

### 3.        Market Based Approach

The market based approach is based on the theory that the market determines fair market value.

The guideline company method utilizes the current market values of corporations engaged in the same or similar lines of business as evidence of the fair market value of the subject company.  Although it is rare that two companies are completely alike, it is possible to find publicly-traded companies that are engaged in the same or a similar line of business as the subject company and affected by similar economic and industry factors. After selecting relevant "guideline companies," earnings and cash flow multiples are computed based upon daily trading prices of the stock of the publicly-held guideline companies, whose shares are listed on an organized exchange. The selected multiples are then applied to the respective "normalized" financial and operating results (typically trailing twelve months) of the subject company in order to estimate the fair market value.

The transaction method involves an analysis of recent transactions with operations similar to the subject company's principal business operations.  Multiples calculated utilizing this approach involve controlling interests in the target's enterprise.  Market derived multiples, based on revenues, operating earnings or other relevant indices/metrics are applied to the appropriate financial indicators of the subject company to determine a range of values.  The result is adjusted for differences between the subject and the "comparable" transactions, such as size, profitability, geography and expected growth.  This methodology requires the identification and detailed review of acquisitions (both public and private), the transaction pricing multiples suggested by these transactions, and an analysis of relevant deal terms and structures.  Unlike the multiples derived from the guideline company approach, the multiples calculated in this

Confidential – Pursuant to Protective Order

approach will be determined through the analysis of transactions involving controlling interests of the target enterprise.

### C.        Possible Valuation Adjustments

After completing one or more of the methodologies used to value a company, the next step is to determine whether the final value is subject to a discount or premium depending on the circumstances of the assignment.  Some common discounts and premiums include:

Discount for Lack of Control - an amount or percentage deducted from the pro rata share of value of 100% of an equity interest in a business to reflect the absence of some or all of the powers of control.

Discount for Lack of Marketability - an amount or percentage deducted from the value of an ownership interest to reflect the relative absence of marketability.

Control Premium - an amount or a percentage by which the pro rata value of a controlling interest exceeds the pro rata value of a non-controlling interest in a business enterprise, to reflect the power of control.

## V.      ROLE OF FINANCIAL INFORMATION IN VALUATIONS

It is common for valuation practitioners to analyze historical financial results of the subject entity in order to understand and assess the subject entity's past performance and operating trends.  Financial results of a business entity are typically presented in financial statements, including income statements, balance sheets, and statements of cash flows.  Other types of underlying financial data and reports can also be analyzed if financial statements are not available.   Financial statements and underlying financial data and reports are commonly used in valuation analyses.

Confidential – Pursuant to Protective Order

### A.   Income Statements

Historical operating results of a business entity over a period of time can be analyzed using an income statement, also referred to as a statement of operations or profit and loss statement.  Common income statement line items or categories typically include sales, cost of sales, gross profit, operating expenses, and operating income or earnings before interest, taxes, and depreciation ("EBITDA").

### B.   Balance Sheets

A balance sheet reflects the financial position of a business entity as of one point in time, rather than for a period of time, as is reflected in an income statement.  Common balance sheet items or categories include current assets (e.g., cash, accounts receivable), long-term assets (e.g., property, plant and equipment), current liabilities (e.g, accounts payable), long-term liabilities (e.g., notes payable), equity, and retained earnings.

### C.   Cash Flow Statements

A cash flow statement reflects the sources and uses of cash for a business entity.  It is common for a cash flow statement to be organized into cash flows from operating activities, cash flows from investing activities, and cash flows from financing activities.

### D.   Other Financial Data Sources

Other financial data sources can provide underlying data and other information relevant to a valuation analysis.  These types of sources can include, for example, sales reports, invoices, receipts, or other evidence of revenue generated by a business entity.   Business valuations also frequently rely on forecasts or estimates to project future operating performance of a business entity.   Forecasts or estimates of future performance often consider historical operating performance of a business entity and growth rates of s the power of control.

Confidential – Pursuant to Protective Order

## VI.    VALUATION ANALYSIS

As of the date of this report I have not been provided with the types of financial data discussed herein that are necessary for me to perform my analysis.  I will update my analysis based on this financial data when it is received, in accordance with the valuation methodologies discussed previously in this report.

## VII.   TRADEMARK INFRINGEMENT ANALYSIS

### A.    Applicable Trademark Law

Although my expertise is in the areas of economic and financial analysis, I have read and am familiar with the U.S. statute and certain related case law pertaining to the assessment of damages in a trademark infringement suit.  The bases for my opinions and understanding of the referenced legal principles are a result of my experience in these types of matters.

I understand that United States Code Section 1051-1127, (the "Lanham Act") forms the basis for damages awarded by a Court for the infringement of a trademark.  The Lanham Act defines a trademark as:

> "...*any word, name, symbol or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured by others.*"

I understand under the Lanham that "the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover:"

1) Defendant's profits;

2) Any damages sustained by the Plaintiff; and

3) The costs of the action.

Confidential – Pursuant to Protective Order

I further understand that under the Lanham Act, "in assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."

As of the date of this report I have not been provided with the information that will allow me to assess Defendant's sales.

Confidential – Pursuant to Protective Order

# Drew D. Mooney, CPA/ABV/CFF

## Managing Director – Forensic & Litigation Consulting

drew.mooney@fticonsulting.com

**2001 Ross Avenue**

**Suite 400**

**Dallas, TX 75201**

Tel: +1 214 397 1692

**CERTIFICATIONS**

Certified Public Accountant, Texas

Accredited in Business Valuation, American Institute of Certified Public Accountants

Certified in Financial Forensics, American Institute of Certified Public Accountants

**PROFESSIONAL AFFILIATIONS**

American Institute of Certified Public Accountants

CFA Institute

Licensing Executives Society

**EDUCATION**

M.S., Finance, Texas A&M University

B.B.A., Accounting, Texas A&M University

Drew Mooney is a Managing Director at FTI Consulting and is based in Dallas. Mr. Mooney specializes in dispute consulting services and forensic accounting. He has significant experience in providing financial, accounting and economic analysis to complex business disputes involving intellectual property, securities class actions, breach of contract and business valuations. Mr. Mooney has been designated as an expert witness in Federal and State of Texas courts.

Mr. Mooney is a licensed Certified Public Accountant in the state of Texas, Accredited in Business Valuation by the AICPA, and is Certified in Financial Forensics by the AICPA. He is a member of the American Institute of Certified Public Accountants and the CFA Institute.

Mr. Mooney obtained a B.B.A. in accounting and a M.S. in Finance from Texas A&M University.

Prior to joining FTI Consulting, Mr. Mooney worked in KPMG's Forensic Dispute Advisory Services practice in Dallas.

## Professional Experience

Mr. Mooney has provided forensic and litigation advisory services in a wide range of industries. His specific areas of experience include the following:

**Intellectual Property**

- Mr. Mooney's intellectual property experience includes matters involving patent, trademark and copyright infringement as well as trade secret misappropriation. He has experience in evaluating damages associated with lost profits, reasonable royalties, unjust enrichment, disgorgement of profit, and diminution of value.

- Calculated reasonable royalty and lost profit damages for patent infringement disputes in a wide variety of industries, including financial services, consumer products, medical devices, automotive, internet-based communications, telecommunications, semiconductor, software and industrial manufacturing. Mr. Mooney is skilled in the application of the Georgia-Pacific factors to the determination of reasonable royalty rates. His work frequently includes calculation of an appropriate reasonable royalty base, assessing the profitability of accused products, and review of license agreements.

- Calculated trademark infringement damages associated with lead generation mailers, beauty care products, irrigation equipment, and medical devices. Experienced at analyzing income statements to assess incremental profit of accused products and evaluating the portion of incremental profit attributable to the infringing mark. Mr. Mooney has also assessed damages resulting from false advertising claims.

- Assessed damages associated with theft of trade secrets claims in various industries, including oil and gas, consumer products, and web-based programs.



Drew D. Mooney

- Consulted with clients regarding the management of their intellectual property assets.

- Performed numerous royalty audits of licensed technologies in the computer, electronics, automotive, aviation and home accessory industries. Audits included a review of the business operations and profit sharing calculations and identified multiple issues related to cost allocations, transfer pricing and contract compliance. Analysis resulted in recovery of underreported royalties and associated interest from multiple licensees.

## Forensic Accounting

- Mr. Mooney has been involved in numerous matters related to the appropriate application of generally accepted accounting principles. He has worked on financial investigations involving earnings management, improper revenue recognition and embezzlement. His work frequently requires reconstruction of accounting and financial records for purposes of performing financial analysis.

- Participated in a financial reporting investigation and restatement related to improper revenue recognition and billing fraud for a business process outsourcing company.

- Assisted with a leading retail company's response to a SEC informal inquiry relating to potential improper revenue recognition. Analyzed revenue to determine quarterly and annual impact of timing differences related to the recording of certain sales transactions. Performed materiality analysis and evaluated potential impact on quarterly EPS.

- Investigated allegations of fraud and misconduct related to employee embezzlement of funds from a wholesale energy company.

## Securities Litigation

- Mr. Mooney has provided analysis to clients involved in valuation and securities related litigation, including evaluating damages under 10b-5 and 11. He has assisted with the preparation of expert testimony and other financial consulting services for the purposes of defending companies in multi-million dollar securities class action matters. He has provided assistance with damage quantification and used complex financial models and sophisticated statistical techniques in order to assist clients in minimizing damages.

- Mr. Mooney has led teams in developing and implementing comprehensive event studies, worked with other consulting firms and outside experts on behalf of joint defendant groups, and assisted in the preparation of expert reports. His analysis frequently includes evaluation of economy-wide and industry-specific factors that impact a company's stock price. He has performed simulations of plaintiff expert share trading models for purposes of replicating plaintiff-style damages estimates. He has also advised counsel on appropriate strategies regarding mediation and settlement.

## General Commercial Litigation

- Mr. Mooney has been involved in commercial litigation matters involving allegations of breach of contract, tortuous interference, lost earnings, unjust enrichment and disgorgement of profits.

- Calculated lost profits associated with an alleged breach of employment agreement between a physician and a local hospital.

- Evaluated lost earnings and benefits associated with an allegation of employment discrimination. Evaluated opposing expert's damages model, assisted in preparation of opposing expert deposition, provided consulting assistance at trial for damages related testimony.

## Valuation

- Mr. Mooney is skilled in the use of valuation principles, including discounted cash flow analysis and relative valuation analysis.  He has valued entities, business segments, product lines, and minority interests in businesses ranging in size from start-up companies to Fortune 500 companies.

- Valued a product line comprised of power injectors and contrast used in conjunction with CT and MRI imaging for a leading medical device company.



Drew D. Mooney

- Calculated the value of a portfolio of quick-serve restaurants as an element of damages in a breach of fiduciary duty litigation. Performed a discounted cash flow analysis of more than 30 individual restaurant locations.

- Valued potential damages due to a breach of contract surrounding a failed merger of two oil and gas producers. Performed industry and company specific research related to valuation variables. Created custom index of comparable firms for use in regression analysis.

- Evaluated closed-end mutual fund and private equity market returns for investments in Asian high-technology firms in a dispute between a private equity firm and its general partners.

- Valued the international business of a U.S. firm as part of an anti-trust allegation. Evaluated current and projected levels of inflation for Mexico as well as the impact of forecasted currency exchange rates on asset returns.

- Calculated lost profits in a breach of employment agreement between a physician and a local hospital.

### Expert Witness Designation and Testimony

Mr. Mooney has been designated as an expert witness on damages in Federal and State of Texas courts.  The cases for which Mr. Mooney has been designated as an expert witness include:

- Beal Bank, SSB, and LPP Mortgage, Ltd. v. Washington Federal Savings and Loan Association, United States District Court, Northern District of Texas, Dallas Division, Civil Action No. 3:13-CV-0726-N (Designated as Expert, Expert Report Issued)

- SRK Consultants, LLC v. Celeritas Chemicals, LLC, 96th Judicial District Court, Tarrant County, Texas, Cause No. 096-262354-12 (Designated as Expert, Expert Report Issued)

- David Kahan, P.A., as Collateral Agent for the Secured Debenture Holders and Secured Debenture Holders v. EFP Rotenberg, LLP, a New York Limited Liability Partnership, United States District Court, Southern District of Florida, West Palm Beach Division, Civil Action No. 9:13-CV-80844-MiddleBrooks/Brannon (Designated as Expert)

- David Neiger, derivatively on behalf of Sun River Energy, Inc., Kevin W. Van Stone, derivatively on behalf of Sun River Energy, Inc., and Kent Jensen, derivatively on behalf of Sun River Energy, Inc. v. Donal R. Schmidt, Jr., Thimothy S. Wafford, James Pennington, Judson F. Hoover, Robert B. Fields, Stephen W. Weathers, Mark Hall, Daniel M. Cofall, Sierra Foxtrot, LP, Sierra Foxtrot Genpar LLC, and Maxwell Resources, Inc. f/k/a Mericol, Inc., 134th Judicial District Court, Dallas County, Texas, Cause No. DC-12-06318 (Designated as Expert, Expert Report Issued, Deposition Testimony)

- BioTalk Technologies Inc. v. Sadick Research Group, Sadick Research Group LLC, Dr. Neil S. Sadick, and Dr. Neil S. Sadick, an Individual, United States District Court, Northern District of Texas, Dallas Division, Civil Action No. 3:14-CV-01434-M (Designated as Expert, Expert Report Issued)

- Hygeia Paragon Holding, Inc., Assess MD, LLC, Medical Groupware, LLC and HealthQuest Alliance, LLC v. Jeffrey Bullard, JMB Health Solutions LLC, Ryan McCollom, Raegena Seitz-Moulds, and S. Jan Bishop, 44th-B Judicial District Court, Dallas County, Texas, Cause No. DC-14-05542 (Designated as Expert)

